UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| A. M. MANUFACTURING COMPANY, INCORPORATED, an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| J.C. FORD COMPANY, a California corporation, | ) ) ) ) | 06 C 2188 |
| and | ) ) | |
| RUHE CORPORATION, a California corporation, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

The following matter comes before the court on Defendants', JC Ford Company ("JC Ford") and Ruhe Corporation ("Ruhe"), (collectively referred to as "Defendants"), Motion to Dismiss Plaintiff's, AM Manufacturing Company, Incorporated ("AM"), complaint pursuant to Fed. R. Civ. P. 12(b)(2). For the reasons set forth in the opinion below, Defendants' Motions are granted.

## BACKGROUND

AM is an Illinois corporation in the business of designing and manufacturing tortilla presses. Ruhe, a holding company, is a California corporation with its principal

place of business in La Habra, California. JC Ford, in addition to being a subsidiary of Ruhe, is also a California corporation with its principal place of business in California and has been in the business of producing automated tortilla, tortilla chip and taco/tostada manufacturing systems since 1945. JC Ford has no offices, no production facilities, no employees, and no distributor in Illinois. The following facts are taken from AM's complaint as well as the subsequent filings submitted by the parties, which we assume are true for the purposes of this Motion.

The relationship between AM and JC Ford began in 2001 and allegedly was akin to a partnership. In 1999, AM designed a continuous tortilla press, and sold three of said presses to JC Ford and/or JC Ford's customers in November 2001, May 2003, and September 2003. While AM was designing its continuous press, various persons from JC Ford made visits to AM in Illinois to understand how AM's presses worked. Further, between 2001 and 2003, one of AM's sales personnel went from Illinois to California to help promote and market JC Ford's tortilla lines. Since the first shipment of AM's continuous press to one of JC Ford's customers, JC Ford has continued to consult AM about installation, servicing, maintenance and marketing issues regarding the continuous presses. In addition, since November 2001, JC Ford has been acting as an intermediary between its tortilla line customers and AM to improve and/or modify AM's continuous press or to maintain and service the presses. AM alleges that as recently as April 7, 2006, one of JC Ford recommended to an AM employee posing as

a potential customer that he contact two of JC Ford's previous customers in Chicago to observe the operation of JC Ford's presses and lines.

JC Ford has since manufactured a flour tortilla machine with a continuous press, which is the patented device that AM alleges the Defendants infringed. JC Ford markets its products at trade shows and on its web-site (without pricing information); however, JC Ford conducts all of its sales in-house from its corporate office in California.

On April 19, 2006, AM initiated this suit against the Defendants alleging patent infringement pertaining to its continuous tortilla press. Subsequently, on May 25, 2006, Defendants filed the instant Motions to Dismiss AM's complaint on the basis that AM has failed to establish personal jurisdiction over Defendants.

## **LEGAL STANDARDS**

Fed. R. Civ. P. 12(b)(2) governs motions to dismiss claims based upon lack of personal jurisdiction. Under this rule, the burden of proof rests upon the party asserting jurisdiction; however, this party is only required to make a *prima facie* showing that jurisdiction exists. See Saylor v. Dyniewski, 836 F.2d 341, 341 (7th Cir. 1988). In a motion to dismiss based upon lack of personal jurisdiction, the court must accept all well-pleaded facts within the complaint as true, resolve all factual disputes in favor of the party asserting jurisdiction, and draw any reasonable inferences from those facts in

the asserting parties favor. Dawson v. General Motors Corp., 977 F.2d 369, 372 (7th Cir. 1992).

## DISCUSSION

When a case comes before a court on the basis of diversity jurisdiction, a federal district court in Illinois may exercise personal jurisdiction over a nonresident defendant only if an Illinois state court would have jurisdiction. See RAR Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997); Dehmlow v. Austin Fireworks, 963 F.2d 941, 945 (7th Cir. 1992). Under the Illinois long-arm statute, a court may exercise jurisdiction over nonresident defendants for a cause of action arising from acts such as transacting any business within the state, committing a tortious act within the state, or making or performing any contract or promise substantially connected with the state. 735 ILCS 5/2-209(a). Furthermore, the statute provides that a court may exercise jurisdiction on any basis permitted by either the Illinois or federal constitutions. 735 ILCS 5/2- 209©. To determine the reach of Illinois due process, courts look to Federal Due Process limits on jurisdiction. RAR, 107 F.3d at 1276-1277.

Personal jurisdiction can be either general or specific. General jurisdiction arises when a defendant's activities are continuous and systematic, to the extent that it is proper for a court to exercise jurisdiction over the party for any action it takes. See Helicopteros Nacionales de Colombia, SA v. Hall, 466 U.S. 408, 104 S.Ct 1868 (1984).

Specific jurisdiction, by contrast, can be exercised when a suit arises out of or is related to the defendant's contacts with the forum. See id. at 414 n.8.

AM has failed to provide any evidence or make an argument that either of the Defendants are subject to our specific jurisdiction; however, AM contends that general jurisdiction exists as to both Defendants because JC Ford's business dealings are continuous and systematic in Illinois and Ruhe, as JC Ford's parent company, exerts a substantial amount of control over JC Ford. We turn to address each of the Defendant's Motions individually.

### *1. Whether We have Jurisdiction over JC Ford*

When deciding whether general jurisdiction exists, a court looks to a defendant's additional contacts with the forum state beyond those related to the action being brought against it to determine whether it can exercise general personal jurisdiction over the defendant. See Dehmlow v. Austin Fireworks, 963 F.2d 941, 947 n. 6 (7th Cir.1992) (citation omitted). A party with extensive contacts in a state can be subject generally to the personal jurisdiction of Illinois courts. Helicopteros, 466 U.S. at 414. Moreover, a finding that a nonresident defendant is doing business in Illinois so as to maintain a presence here subjects a defendant to personal jurisdiction of Illinois courts for all matters. See Aetna Cas. & Sur. Co. v. Crowther, Inc., 581 N.E.2d 833, 835 (Ill.App.Ct.1991) (citation omitted). The business engaged in by defendant must be

intentional, substantial, and continuous, rather than inadvertent, trivial, or sporadic. See Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co., 892 F.2d 566, 570 (7th Cir.1989). A corporation is "doing business" when it engages in a "regularity of activities in Illinois." Neuman & Assoc. v. Florabelle Flowers, Inc., 15 F.3d 721, 724 (7th Cir.1994), citing Cook Assocs., Inc. v. Lexington United Corp., 87 Ill.2d 190, 429 N.E.2d 847, 852 (1981).

Even when viewing the disputed facts in a light most favorable to AM, it becomes apparent that we do not have general personal jurisdiction over JC Ford. It is evident from the parties submissions that JC Ford's business in Illinois has been sporadic and limited. The relevant allegations show that JC Ford had previous dealings with three Illinois customers. Further, although JC Ford has had continued dealings with those three customers, the dealings came about through requests from the Illinois customers to order parts from JC Ford. It seems that this continued business, which AM relies so heavily on in making its argument, is hardly substantial enough to warrant a finding that we hold general personal jurisdiction exists. In addition, any continued relationship between JC Ford and AM has been informational in nature regarding JC Ford's questions as to the continued operations of the tortilla presses it purchased from AM. This limited connection does not satisfy the continuous and systematic presence necessary to support general jurisdiction. AM fails to posit any additional allegations

that JC Ford conducted any further business, or solicitation to do so, in Illinois. Without such, there is no basis to conclude that the conduct of JC Ford was continuous and systematic. Consequently, dismissal is warranted.

*2. Whether We have Jurisdiction over Ruhe*

Given our jurisdictional decision as to JC Ford, it would be impossible for us to have jurisdiction over its parent company Ruhe based on the allegations set forth in the complaint. However, even if we did have jurisdiction over the alleged wrongs of JC Ford, based on the present allegations, we still would not hold jurisdiction over Ruhe. The primary issue pertaining to our jurisdiction as to Ruhe is whether or not the alleged wrongdoings of JC Ford can be attributed to Ruhe to establish specific personal jurisdiction.

Generally, "the parent-subsidiary relationship is insufficient to confer personal jurisdiction." Integrated Bus. Info. Serv. Ltd. v. Dun & Radstreet Corp., 714 F.Supp. 296, 299 (N.D.Ill. 1989). However, because parent companies necessarily exercise some control over their wholly owned subsidiaries, there must be some "basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent." IDS Life Ins. Co. v. America Life Ins. Co., 136 F.3d 537, 540 (7th Cir. 1998). Personal jurisdiction is not established where "corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the

subsidiary." Central States S.E. and S.W. Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 944 (7th Cir. 2000). Although control is a requisite to establish specific personal jurisdiction, *total control is not*. (emphasis added) Liberty Mutual Fire Ins. Co. v. Reimer Express Enter., Ltd., 82 F. Supp.2d 887, 890 (N.D.Ill. 2000); See Japax, Inc. v. Sodick Co. Ltd., 542 N.E.2d 792, 797 (1989).

In Japax, the court found specific personal jurisdiction over a foreign company on the plaintiff's allegations that the company indirectly sold and advertised its products in Illinois, loaned employees and money to its Illinois subsidiary, had a distributor agreement with an Illinois corporation, and had a distributor with a sales office in Illinois. 542 N.E.2d at 796. In IDS Life Insurance, the Seventh Circuit recognized that it could also exercise specific personal jurisdiction over a parent company if the subsidiaries were acting as its agents. 136 F.3d at 540. Ruhe argues that a subsidiary-parent relationship is alone not enough to establish specific personal jurisdiction. We agree.

Even when viewing the disputed facts in a light most favorable to AM, it is apparent that we do not have specific personal jurisdiction over Ruhe. AM contends that Ruhe is responsible for the actions of JC Ford because three of Ruhe's partners are also JC Ford corporate officers. However, that fact alone is not enough to establish the type of control over the subsidiary that AM alleges. Given that AM has failed to put

forth any additional support for its allegation that Ruhe actually controls JC Ford and its activities, Ruhe's Rule 12(b)(2) Motion is accordingly granted.

## **CONCLUSION**

For the reasons set forth above, Defendants' Motions to Dismiss AM's complaint pursuant to Fed. R. Civ. P. 12(b)(2) are granted.

                                                  /s/ Charles P. Kocoras
Charles P. Kocoras
District Judge

Dated:      July 12, 2006